UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
------------------------------------------------------------- x
HOYEUN KANG and ADOLFO LOZADA      :
ROLDAN,                            :
                                   :         REPORT AND
                   Plaintiffs,     :         RECOMMENDATION
                                   :
         -against-                 :         20-cv-00746 (MKB)(PK)
                                   :
ROSEANN PERRI and MICHAEL GILLON,  :
                                   :
                   Defendants.     :
                                   :
                                   :
------------------------------------------------------------- X
```

**Peggy Kuo, United States Magistrate Judge:**

Hoyeun Kang ("Kang") and Adolfo Lozada Roldan ("Roldan") (collectively, "Plaintiffs"), brought this action against Roseann Perri ("Perri") and Michael Gillon ("Gillon") (collectively, "Defendants") to recover damages for personal injuries sustained from a motor vehicle collision. (*See* "Compl.," Dkt. 1-1.) Before the undersigned on referral from the Honorable Margo K. Brodie is Defendant Gillon's Motion for Spoliation Sanctions ("Motion," Dkt. 15), seeking dismissal of Plaintiff Kang's claims in its entirety with prejudice, the preclusion of Plaintiff Kang's claim for cervical spine injuries or of evidence of such injuries at trial, or an adverse inference instruction. For the reasons stated herein, the undersigned respectfully recommends that the Motion be granted and that an adverse inference instruction be imposed as a sanction.

## BACKGROUND

On June 26, 2019, Plaintiff Kang was the driver of a motor vehicle that was involved in a collision with the vehicles driven by Defendants. (Compl. ¶¶ 5, 9, 12, 14-17.) Plaintiff Kang alleges that as a result of the incident, he sustained injuries to his cervical spine, lumbar spine and right shoulder. (Ex. B to Affirmation of Ellen Greiper ("Greiper Aff."), Bill of Particulars, Dkt. 15-3 at ¶

1

10.) The injuries to his cervical spine are described as disc herniations at C3-4, C4-5, C5-6, C6-7, C7-T1 and T1-2; possible disc herniation at T2-3; mild central spinal stenosis at C3-4 through C5-6; and loss of the normal cervical lordosis. (*Id.*) Plaintiffs brought this lawsuit on August 12, 2019 in the Supreme Court of the State of New York, County of Queens. On February 11, 2020, Defendants removed the case to this Court. (Notice of Removal, Dkt. 1.)

During discovery, Defendant Gillon learned that Plaintiff Kang's cervical spine and left shoulder were injured in a prior motor vehicle accident that occurred on September 17, 2014. (Greiper Aff. ¶ 4, Dkt. 15; Affirmation of Jusun Yook ("Yook Aff.") ¶ 11, Dkt. 21.) The injuries to the cervical spine were described as follows: "Straightening of the cervical spine, associated with reversal of the lordotic curvature of the cervical spine is noted compatible with muscular spams. Mild degree of bulging of annulus fibrosus is noted at C6-C7 level. Ventral bulging is also noted at C5-6 level anteriorly." (Ex. I to Yook Aff., MRI Report dated Oct. 14, 2014, Dkt. 21-11; Yook Aff. ¶ 11; Ex. H to Yook Aff., Verified Bill of Particulars dated Jan. 13, 2017 ¶ 6, Dkt. 21-10.)

In a Notice to Preserve & Maintain, dated April 20, 2020 ("Preservation Notice"), Defendant Gillon directed Plaintiffs to "appear for independent medical examinations [hereinafter 'IME(s)'] prior to undergoing surgery in this matter" (Ex. D to Greiper Aff., Preservation Notice at 1, Dkt. 15-5) (brackets in original). It also stated that "defendants will seek sanctions for spoliation if such examinations are not held before surgery." (*Id.*) Plaintiff Kang's counsel acknowledged receipt of the Preservation Notice by responding to Defense counsel on that same day, "Well received." (Greiper Aff. ¶ 5; Ex. E to Greiper Aff., "Apr. 20, 2020 E-mail," Dkt. 15-6.)

On October 2, 2020, Plaintiff Kang's worker's compensation board gave its approval for Plaintiff Kang to undergo a cervical discectomy. (Yook Aff. ¶ 17; Ex. O to Yook Aff., Worker's Compensation Approval, Dkt. 21-16.) At his deposition on October 6, 2020, when asked if anyone had recommended neck surgery, Plaintiff Kang testified that his doctor suggested that he undergo a

2

"[d]iscectomy." (Yook Aff. ¶ 16; Ex. N to Yook Aff., Transcript of Hoyeun Kang Deposition ("Dep. Tr.") at 87:15-88:16, Dkt. 22-3.) He did not testify that he would be undergoing such surgery or when.

On October 31, 2020, Plaintiff Kang underwent a cervical spine discectomy as follows:

1. Discectomy C5-6
2. Nucleus pulpous ablation; and
3. annuloplasty

(Ex. P to Yook Aff., Plaintiffs' Supplemental Bill of Particulars, Dkt. 21-17.) Plaintiff Kang did not notify Defendant Gillon before undergoing this procedure. (Grieper Aff. ¶ 6.) In a Supplemental Bill of Particulars dated November 13, 2020, Plaintiff Kang informed Defendants of this surgery. (Yook Aff. ¶ 18; Ex. P to Yook. Aff.)

On November 18, 2020, Defendant Gillon filed a motion for discovery, complaining of discovery problems with Plaintiffs, including "that plaintiff [Kang] has engaged in spoliation, by undergoing surgery without allowing the IME to take place prior to same." (Dkt. 14 at 1.) On December 1, 2020, Defendant Gillon served Plaintiff Kang with a notice to schedule an IME for January 19, 2021. (Ex. Q to Yook. Aff., Notice of Designation, Dkt. 21-18.)

On December 7, 2020, the Court held a hearing on Defendant Gillon's discovery issues and granted his request for leave to file a motion for sanctions. (Minute Order dated Dec. 7, 2020.) On December 21, 2021, Defendant Gillon filed the Motion, seeking dismissal of Plaintiff Kang's complaint, preclusion of Plaintiff Kang's cervical spine claim or of evidence of those injuries at trial, or an adverse inference charge based on Plaintiff Kang's destruction of evidence. (Def. Mem., Dkt. 15-1 at 3, 15.) The Court held a motion hearing on February 5, 2021, at which Plaintiff Kang's counsel acknowledged that he received the Preservation Notice. He provided no explanation for not notifying defense counsel before Plaintiff Kang underwent the cervical discectomy. (Minute Entry dated Feb. 8, 2021.)

To assist the Court in determining whether the surgery resulted in the loss of any evidence relevant to Defendant Gillon's defense, the Court granted Defendant Gillon leave to supplement the Motion, indicating what specific evidence, if any, was no longer available because of the cervical discectomy. (*Id.*) The Court also directed Plaintiff Kang to make himself available for a medical examination by a doctor selected by Defendant Gillon. (*Id.*)

On April 12, 2021, Defendant Gillon's medical expert Dr. Yong H. Kim ("Dr. Kim") conducted an examination of Plaintiff Kang,[1] and on April 26, 2021, Defendant Gillon filed his Supplemental Brief, attaching Dr. Kim's report. (Def. Supp. Brief, Dkt. 30; Ex. A to Def. Supp. Brief, "IME Report," Dkt. 30.) Dr. Kim reported that he was "unable to determine or evaluate [Plaintiff Kang]'s complaints of ongoing neck pain and right upper extremity symptoms that reportedly developed immediate[ly] following the …accident" because Plaintiff Kang underwent the surgery "with reported significant resolution of his symptoms." (IME Report at 10.) Dr. Kim's examination of Plaintiff Kang's cervical spine showed "no objective or subjective issues in his cervical spine." (*Id.*) According to Dr. Kim, by having the cervical discectomy performed, "not only the content of the nucleus area of [Plaintiff Kang's spinal] disc at C5-6 was disrupted, but it also permanently disrupted and changed the overall structure of the annulus, the outer lining of the disc." (IME Report at 11.) The cervical discectomy "produce[d] changes with respect to the overall characteristics of the disc and its ability to load and weight bear and produce range of motion compared to the preoperative state." (*Id.*)

Plaintiff Kang filed a Supplemental Opposition on May 3, 2021. (Pl. Supp. Opp., Dkt. 31.)

---

[1] An examination was originally scheduled for March 5, 2021, but Plaintiff Kang did not attend because he "seem[ed] to have COVID-19 virus-like symptoms." (Ex. B to Pl. Supp. Opp., Affidavit of Hyunjin Woo ¶ 6, Dkt. 31-2.)

4

## DISCUSSION

### I.     The Legal Basis for Imposing Sanctions

Defendant Gillon seeks sanctions against Plaintiff Kang pursuant to Federal Rules of Civil Procedures 26(b), 37(b) and 37(c). (Def. Mem. at 1.)

Because Plaintiff Kang was not directed to comply with a court order, Rule 37(b) is not applicable, and the undersigned evaluates whether sanctions are appropriate under the Court's inherent power. *See Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99, 106-107 (2d Cir. 2002) ("Even in the absence of a discovery order, a court may impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs."); *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 135–36 (2d Cir. 1998) (federal courts have "well-acknowledged inherent power to levy sanctions in response to abusive litigation practices" (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980)). The exercise of that "inherent power to control litigation" includes the authority to impose sanctions for spoliation. *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999). "Whether exercising its inherent power, or acting pursuant to Rule 37, a district court has wide discretion in sanctioning a party for discovery abuses, and for the spoliation of evidence." *Reilly v. Natwest Markets Group Inc.*, 181 F.3d 253, 267 (2d Cir. 1999) (citations omitted).

### II.    Whether There Was Spoliation of Evidence

Spoliation is defined as "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Byrnie v. Town of Cromwell, Bd. Of Ed.*, 243 F.3d 93, 107 (2d Cir. 2001) (quoting *West*, 167 F.3d at 779). In order to succeed on a motion seeking sanctions for spoliation, the moving party must demonstrate that: (1) the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the evidence was destroyed with a culpable state of mind; and (3) the destroyed evidence

was relevant to the moving party's claim or defense "such that a reasonable trier of fact could find that it would support that claim or defense." *Residential Funding Corp.*, 306 F.3d at 107.

A plaintiff's medical condition may constitute evidence capable of being spoliated. *See Martinez v. Nelson*, 101 N.Y.S.3d 580, 583 (N.Y. Sup. Ct. 2019).

### 1. Whether Plaintiff Kang had an obligation to preserve the evidence

"The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001).

Plaintiff Kang had express notice that evidence of his medical condition was considered to be relevant when he was served with the Preservation Notice on April 20, 2020, directing him to appear for an IME before undergoing surgery. Plaintiff Kang admits that he received the Preservation Notice and did not raise any objection to it. (Def. Mem. at 3-4, 8; Apr. 20, 2020 E-mail.) Plaintiff Kang asserts, however, that because "there was no court order compelling an IME" and an IME was not yet scheduled at the time of the surgery, he did not violate any court order and, therefore, should not be subject to sanctions for spoliation. (Pl. Opp. Mem., Dkt. 21-1 at 6, 9.)

A court order is not necessary for a party to have an obligation to preserve evidence. Matters of discovery, including the conduct of IMEs, are generally conducted between the parties without the need for a court to issue orders. *See generally*, Fed. R. Civ. P. 26. Here, service of the Preservation Notice made explicit that Defendant Gillon wanted the opportunity to examine Plaintiff Kang before any surgery occurred and was therefore sufficient to provide notice to Plaintiff Kang that evidence of his medical condition *before any surgery* was relevant to this litigation. Having received the Preservation Notice and not raised any objection, Plaintiff Kang had an obligation to preserve evidence of his medical condition, including by not undergoing surgery without first giving Defendant Gillon the opportunity for his expert to examine Kang.

Plaintiff Kang had clear notice that the condition of his cervical spine was relevant to the litigation and, accordingly, a duty to preserve the evidence of his medical condition.

### 2. Whether Plaintiff Kang had a culpable state of mind when destroying the evidence

In order for a moving party to succeed on a motion for spoliation, it must also show that the party against whom the sanctions are sought destroyed evidence with a culpable state of mind. *Residential Funding Corp.*, 306 F.3d at 108. "[T]he 'culpable state of mind' factor is satisfied by a showing that the evidence was destroyed 'knowingly, even if without intent to breach a duty to preserve it, or negligently.'" *Id.* (citing *Byrnie*, 243 F.3d at 109 (emphasis and alterations omitted).) A finding of bad faith or intentional misconduct is not necessary. *Reilly,* 181 F.3d at 267. Intentional, as opposed to accidental, destruction of evidence in the face of a duty to retain it is sufficient to show a culpable state of mind. *Byrnie*, 243 F.3d at 109.

Plaintiff Kang contends that he did not act with a culpable state of mind, arguing that he "was not willful or intentional or negligent because [the Preservation Notice] failed to designate a doctor or state the date or time the examination to be held," and that the Court had not ordered his compliance with the Preservation Notice or an IME. (Pl. Opp. Mem. at 9.)

As discussed, *supra*, a court order is not necessary for a plaintiff to be on notice of an obligation to preserve evidence. Moreover, the lack of specific information about when and by whom the IME would be conducted does not relieve Plaintiff Kang of his obligation to preserve the relevant evidence. Plaintiff Kang has not described any medical emergency or urgent circumstance that would have made prior notification to Defendants of his surgery impossible or impracticable. At his deposition on October 6, 2020, when he testified that it was "recommended" that he undergo a cervical discectomy, he did not indicate any desire or need to undergo the surgery imminently. (*Id.* at 7-8.)

7

The undersigned finds that Plaintiff Kang acted at least negligently when he failed to preserve and maintain evidence of his medical condition and did not notify Defendants before taking action that could potentially destroy such evidence. In *Martinez v. Nelson,* the court found that the plaintiff had acted with "at least ordinary negligence" when he underwent surgery under similar circumstances, stating, "A reasonably prudent person who commences a personal injury action to recover damages for injuries to his or her cervical spine would not have non-emergency surgery on that body part without affording a defendant, who has clearly communicated his or her desire for the person to submit to a pre-surgery IME, an opportunity to have the IME performed before the surgery." *Martinez*, 101 N.Y.S.3d at 583-584. In the instant case, the Preservation Notice clearly communicated Defendants' desire to conduct an IME before any surgery was performed that might alter the medical evidence of Plaintiff Kang's injuries. Thus, even if the primary purpose of the cervical discectomy was to improve his health rather than destroy evidence, Plaintiff Kang should have used reasonable care and notified Defendants before undergoing the surgery. His failure to do so constitutes negligence, which is sufficient to satisfy the culpable state of mind factor.

### 3. Whether the evidence was relevant to a claim or defense

Finally, the party moving for spoliation sanctions must establish that the unavailable evidence is relevant to its claims or defenses. *See Byrnie*, 243 F.3d at 109; *Kronisch v. United States*, 150 F.3d 112, 128 (2d Cir. 1998). "[S]anctions [are not] warranted by a mere showing that a party's preservation efforts were inadequate" "if no relevant information is lost." *Orbit One Commc'ns, Inc. v. Numerex Corp.*, 271 F.R.D. 429, 441 (S.D.N.Y. 2010). Relevant evidence is "something more than sufficiently probative to satisfy Rule 401 of the Federal Rules of Evidence."[2] *Residential Funding Corp.*, 306 F.3d at 108-09. "However, courts must take care not to 'hold the prejudiced party to too strict a standard of

---

[2] Rule 401 defines "relevant evidence" as evidence having *any* tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed. R. Evid. 401 (emphasis in original).

8

proof regarding the likely contents of the destroyed or unavailable evidence,'" because doing so would allow the party who destroyed evidence to profit from it. *Singh v. Penske Truck Leasing Co., L.P.*, No. 13 CIV. 1860 VSB GWG, 2015 WL 802994, at *6 (S.D.N.Y. Feb. 26, 2015) (quoting *Kronisch*, 150 F.3d at 128) (alterations omitted).  In his initial response to the Motion, Plaintiff Kang argued that the evidence altered by the cervical discectomy does not meet the "relevance" requirement because "the court lacks the ability to determine the relevancy of the pre-surgical condition of Plaintiff Kang's cervical spine to Defendant Gillon's claim or defense without assistance of a medical expert." (Pl. Opp. Mem. at 10.)

The Court agreed that medical expertise was needed to help determine whether relevant evidence had been destroyed by the surgery and, therefore, ordered the IME to proceed and permitted Defendant Gillon to supplement his Motion with information from his medical expert. *See Martinez*, 101 N.Y.S.3d at 586. (denying spoliation motion, but directing that upon renewal of the motion, "the parties should consider submitting medical affidavits or affirmations shedding light on whether plaintiff's surgery hindered defendants' IME physicians' ability to perform meaningful IMEs of plaintiff's cervical spine.")

Defendant Gillon's medical expert, Dr. Kim, subsequently conducted the IME but could no longer evaluate Plaintiff Kang's complaints of neck pain immediately following the accident because the surgery on his cervical spine had resulted in "reported significant resolution of his symptoms." (IME Report at 11.)   Defendant Gillon argues that "due to the permanent changes to the physical characteristics of the cervical disc as a result of the surgery, Dr. Kim has no way to measure Plaintiff Kang's symptomology and limitations as they were post-accident, but pre-surgery." (Def. Supp. Mem., Dkt. 30 at 2-3.)  Dr. Kim was "able to only examine a permanently changed disc and Plaintiff Kang's range of motion with that changed disc, rather than the condition of Plaintiff Kang's cervical spine and alleged limitations as they existed after the accident." (*Id.* at 3.)

9

Plaintiff Kang challenges the IME Report on the basis that "Dr. Kim never reviewed the surgical operative photographs of the cervical spine surgery at issue" when examining Plaintiff Kang. (Pl. Supp. Opp. Mem., Dkt. 31 at 2-3.)  He further asserts that "Dr. Kim's finding that the cervical spine surgery has produced change[s] in Plaintiff Kang's ability to produce range of motion must be disregarded because it is irrelevant to Defendant Gillon's defense… because Dr. Kim, in any event, found a full range of motion of the cervical spine upon his physical examination of Plaintiff Kang's cervical spine." (*Id.* at 6.)

Plaintiff Kang provides no support for his assertion that a review of surgical operative photographs is necessary for Dr. Kim to reach his conclusions.  Moreover, Dr. Kim's conclusion that Plaintiff Kang had a full range of motion when examined on April 12, 2021 does not make up for the loss of Defendant Gillon's ability to present evidence of Plaintiff Kang's range of motion after the accident but before the surgery.  To the extent that Plaintiff Kang argues that he suffered physical limitations to his neck as a result of the accident, he could also argue that they improved following surgery, and Defendant Gillon would be unable to rebut that argument with evidence of Plaintiff Kang's range of motion following the accident, even without surgery.

Likewise, at the time of the IME, Dr. Kim found "no objective or subjective issues in [Plaintiff Kang's] cervical spine." (IME at 10.)  However, Dr. Kim had no means of determining whether there were any problems stemming from the accident which surgical intervention fixed.  The surgery essentially destroyed evidence of Plaintiff Kang's pre-operative cervical spine condition, which is relevant to Defendant Gillon's defense on the issue of causation.  That evidence would enable Defendant Gillon to determine whether Plaintiff Kang's alleged injuries in 2019 were non-existent, pre-existing, new, or exacerbated by the accident. (*See* Def. Mem. at 3-7.)  Defendant Gillon has, thus, demonstrated that the now unavailable evidence was relevant to his defense.

10

Because all three factors for a showing of spoliation have been met, the undersigned finds that Plaintiff Kang spoliated evidence by undergoing cervical discectomy without first notifying Defendant Gillon.

### III. The Appropriate Remedy For Spoliation

As a sanction for spoliation, Defendant Gillon requests that the Court dismiss the Complaint with prejudice. (*Id.* at 11). Alternatively, he requests preclusion of Plaintiff Kang's cervical spine claim, preclusion of evidence of his cervical spine injuries at trial, or an adverse inference charge based on Plaintiff Kang's destruction of evidence. (*Id.* at 12-16; Def. Supp. Mem. at 4.)

Although district courts have broad discretion to decide the proper sanction for spoliation, the applicable sanction should seek to achieve the prophylactic, punitive, and remedial aims of the spoliation rules. "The sanction should be designed to: (1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party." *West*, 167 F.3d at 779 (citations omitted).

For the reasons detailed below, the undersigned finds that Plaintiff Kang's spoliation of evidence does not warrant dismissal of the Complaint or preclusion of evidence of his cervical spine injuries.[3] However, the undersigned respectfully recommends that an adverse inference instruction be given as an appropriate sanction.

#### 1. Dismissal

Dismissal is a "drastic remedy" that "should be imposed only in extreme circumstances, usually after consideration of alternative, less drastic sanctions." *Id.*

---

[3] Defendant Gillon requests both preclusion of "evidence at trial of any cervical spine injuries allegedly suffered by [Plaintiff Kang] in connection with his June 26, 2019 accident" (Def. Mem. at 1) and "preclusion of Plaintiff Kang's cervical spine claims" (*Id.* at 12). Because preclusion of Plaintiff Kang's cervical spine claims amounts to dismissal of those claims, the undersigned considers that form of preclusion as part of the analysis of whether dismissal is appropriate.

11

Defendant argues that this case is comparable to *Mangione v. Jacobs* because "Plaintiff Kang has willfully thwarted discovery Orders from this Court and engaged in conduct which can only be characterized as egregious." (Def. Supp. Mem. at 4-5 (citing *Mangione v. Jacobs*, 121 A.D.3d 953, 955, 995 N.Y.S.2d 137 (2014)).) In *Mangione v. Jacobs*, however, the court found that dismissal of the complaint was warranted because the plaintiff repeatedly failed to appear at scheduled IMEs and to provide documents reflecting prior accidents as directed by the court. *Mangione*, 121 A.D.3d at 955. In contrast, Plaintiff Kang did not engage in a pattern of violating court orders or repeatedly failing to appear at scheduled IMEs. He engaged in a single act of spoliation.

Moreover, the surgery affected only his cervical spine. (IME Report at 11.) Plaintiff Kang asserts additional claims related to injuries to the lumbar spine and right shoulder. (Bill of Particulars at ¶ 10; Def. Supp. Mem. at 4, note 1.) Because the Motion does not allege that the cervical discectomy deprived Defendant Gillon of evidence regarding injuries to the lumbar spine and right shoulder, dismissal of the entire case based on the limited effect of Plaintiff Kang's act of spoliation would be excessive. *See West*, 167 F.3d at 780 (dismissal of complaint "not necessary… in order to vindicate the trifold aims" of imposing sanctions).

Accordingly, the undersigned concludes that Plaintiff Kang's spoliation of evidence does not warrant dismissal of the Complaint.

    **2. Preclusion**

In assessing whether preclusion of evidence is a proper sanction for a discovery violation, the court must consider any explanation for the discovery failure, the importance of the evidence to the case, the prejudice to each party, and whether the prejudice is otherwise remediable. *See Outley v. City of New York*, 837 F.2d 587, 590-591 (2d Cir. 1988) (in addition to considering any explanation for the failure to comply, "[t]his analysis requires the district court to consider the importance of the testimony to the case, the prejudice to the party inconvenienced, and the administrative difficulty which the court

itself would face"); *see also Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997) (the four factors are (1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance); *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, No. 04 CIV. 5316 RMB MHD, 2006 WL 3476735, at *8 (S.D.N.Y. Nov. 30, 2006) (reframing the four factors as (1) whether the discovered party has failed to comply with the discovery rules and with a court order, (2) whether that failure to comply is attributable to willfulness, bad faith, or is otherwise culpable, (3) whether the discovering party has been prejudiced by the other side's failures, and if so, the degree of prejudice and whether it is otherwise remediable, and (4) the prejudice that would be occasioned to the discovered party's case by the proposed preclusion (citing *Softel*, 118 F.3d at 961; *Outley,* 837 F.2d at 590)).

Here, Plaintiff Kang provided no explanation for his failure to comply with the Preservation Notice, arguing only that the notice was not court-ordered and did not provide details of an IME. As discussed above, this argument lacks merit.

Evidence of Plaintiff Kang's cervical spine injuries are crucial to his claim regarding those injuries. Precluding all of Plaintiff Kang's evidence of cervical spine injuries under these circumstances would amount to dismissal of his cervical spine claim and cause him great prejudice.

The prejudice to Defendant Gillon caused by Plaintiff Kang's spoliation of his pre-surgery cervical spine condition is less significant. Plaintiff's spoliation was only of evidence that Defendant Gillon could have obtained *before* the surgery, not of *all* evidence regarding his cervical spine injuries. Defendant Gillon could, and did, examine Plaintiff Kang's cervical spine after the surgery, and he can still present the results of the post-surgery IME to challenge Plaintiff Kang's claims of injury and expert evidence from both before and after the surgery. *See Outley*, 837 F.2d at 591 ("only extreme

13

misconduct on the part of the plaintiff or extreme prejudice suffered by the defendants would justify the extraordinary sanction of preclusion in this case.")

Moreover, the imposition of an adverse inference instruction at trial, as discussed below, is sufficient to remedy the prejudice caused to Defendant Gillon. *See Louis Vuitton Malletier*, 2006 WL 3476735, at *11 (finding insufficient justification for broad preclusion on key issues based on existence of other available means to alleviate prejudice).

Therefore, the undersigned finds that an order of preclusion is not warranted.

### 3. Adverse Inference

An adverse inference instruction to the jury regarding the evidence rendered unavailable by Plaintiff Kang's surgery is appropriate to address the remedial, deterrent and punitive goals of sanctions. *See West*, 167 F.3d at 779. "In order to remedy the evidentiary imbalance created by the destruction of evidence, an adverse inference may be appropriate even in the absence of a showing that the spoliator acted in bad faith." *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 77 (S.D.N.Y. 1991). "The adverse inference provides the necessary mechanism for restoring the evidentiary balance." *Id.* at 75.

Imposition of an adverse inference instruction may be appropriate even when the destruction of evidence is found to be negligent. *See Residential Funding Corp.*, 306 F.3d at 108 (sanction of an adverse inference "should be available even for the negligent destruction of documents if that is necessary to further the remedial purpose of the inference. It makes little different to the party victimized by the destruction of evidence whether that act was done willfully or negligently"); *Pegasus Aviation, Inc. v. Varig Logistica S.A.*, 26 N.Y.3d 543, 554 (2015) (adverse inference charge appropriate even where evidence negligently destroyed). *But see Turner*, 142 F.R.D. at 77 (declining to impose adverse inference sanction where "no extrinsic evidence whatever tending to show that the destroyed evidence would have been unfavorable to the spoliator" and stating that "where the destruction was

14

negligent rather than willful, special caution must be exercised to ensure that the inference is commensurate with information that was reasonably likely to have been contained in the destroyed evidence.")

Plaintiff Kang's destruction of evidence of his pre-operative cervical spine condition deprived Defendant Gillon of the ability to explore whether Plaintiff Kang had any cervical spine injuries after the 2019 accident, the extent of any such injuries and whether such injuries were pre-existing or related to the earlier accident in 2014.  Without being able to conduct the examination rendered impossible by Plaintiff Kang's surgery, Defendant Gillon is disadvantaged in refuting Plaintiff Kang's claim of injuries caused by the accident.  It is thus appropriate that Plaintiff Kang not benefit from his actions and that an instruction be given at trial to permit an adverse inference that had Defendant Gillon been able to conduct his examination of Plaintiff Kang before the cervical discectomy, the evidence so obtained would have been unfavorable to Plaintiff Kang.  Because Plaintiff Kang created the "evidentiary imbalance," he should bear the risk that the destroyed evidence would have benefited Defendant Gillon.  *Turner*, 142 F.R.D. at 77.

Accordingly, the undersigned respectfully recommends that the Court impose a sanction of an adverse inference instruction.

## CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that the Motion be granted and that a sanction be imposed in the form of an adverse inference instruction at trial.  Any objection to this Report must be filed in writing with the Clerk of Court within fourteen (14) days of service.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Failure to timely file any objection waives the right to further judicial review of this Report and Recommendation.  *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED:**

*Peggy Kuo*
PEGGY KUO
United States Magistrate Judge

Dated:   Brooklyn, New York
         August 25, 2021