UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------

HOYEUN KANG and ADOLFO LOZADA
ROLDAN,

                Plaintiffs,

      v.

ROSEANN PERRI and MICHAEL GILLON,

              Defendants.

-------------------------------------------------------------

**MEMORANDUM & ORDER**
20-CV-746 (MKB) (PK)

MARGO K. BRODIE, United States District Judge:

        Plaintiffs Hoyeun Kang and Adolfo Lozada Roldan commenced the above-captioned

action against Roseann Perri and Michael Gillon on August 12, 2019, in the Supreme Court of

the State of New York, Queens County, to recover damages for personal injuries sustained from

a motor vehicle collision.  (Compl., annexed to Notice of Removal as Ex. 1, Docket Entry No.

1-1.)  On February 11, 2020, Defendants removed the action to this Court.  (Notice of Removal,

Docket Entry No. 1.)  On December 21, 2020, Gillon moved for sanctions against Kang, (Def.'s

Mot. for Sanctions ("Def.'s Mot."), Docket Entry No. 15), and Plaintiffs opposed the motion,

(Pls.' Resp. to Mot. for Sanctions ("Pls.' Resp."), Docket Entry No. 22).  On August 25, 2021,

Magistrate Judge Peggy Kuo *sua sponte* issued a report and recommendation, recommending

that the Court grant the motion for sanctions and impose an adverse inference instruction as a

sanction (the "R&R").  (R&R, Docket Entry No. 39.)  Kang objects to the R&R, arguing that

Gillon's motion did not meet the requirements for spoliation of evidence and therefore should not be sanctioned.  (Pls. Obj. to R&R ("Pl.'s Obj."), Docket Entry No. 43.)[1]

For the reasons set forth below, the Court adopts the R&R in its entirety and grants Defendants' motion to for sanctions.

## I.   Background

The Court assumes the truth of the factual allegations in the Complaint for the purposes of this Memorandum and Order.

### a.   Factual background

#### i.   The car collision and Plaintiff's surgery

On June 26, 2019, Plaintiff Kang was the driver of a vehicle that was involved in a multi-car collision with the vehicles driven by Defendants.  (Compl. ¶¶ 5, 9, 12, 14-17.)  Plaintiff alleges that as a result of the incident, he sustained injuries to his cervical spine, lumbar spine, and right shoulder.  (Pl.'s Bill of Particulars ¶ 10, annexed to Aff. of Ellen Greiper ("Greiper Aff.") as Ex. B, Docket Entry No. 15-3.)  The injuries to his cervical spine are described as disc herniations at C3-4, C4-5, C5-6, C6-7, C7-T1, and T1-2; possible disc herniation at T2-3; mild central spinal stenosis at C3-4 through C5-6; and loss of the normal cervical lordosis.  (*Id.*)

During discovery, Defendant Gillon learned that Kang's cervical spine and left shoulder were injured in a prior motor vehicle accident on September 17, 2014.  (Greiper Aff. ¶ 4, Docket Entry No. 15; Aff. of Jusun Yook ("Yook Aff.") ¶ 11, Docket Entry No. 21.)  The injuries to the cervical spine were described as follows: "Straightening of the cervical spine, associated with reversal of the lordotic curvature of the cervical spine is noted compatible with muscular spams.

---

[1]  Because the objections are not paginated, the Court refers to the page numbers assigned by the electronic filing system.

Mild degree of bulging of annulus fibrosus is noted at C6-C7 level.  Ventral bulging is also noted at C5-6 level anteriorly."  (MRI Report dated Oct. 14, 2014, annexed to Yook Aff. as Ex. I, Docket Entry No. 21-11; Yook Aff. ¶ 11; Verified Bill of Particulars dated Jan. 13, 2017, annexed to Yook Aff as Ex. H , Docket Entry No. 21-10  ¶ 6, Docket Entry No. 21-10.)

In a Notice to Preserve and Maintain, dated April 20, 2020 ("Preservation Notice"), Gillon directed Plaintiffs to "appear for independent medical examinations prior to undergoing surgery in this matter" and stating that "defendants will seek sanctions for spoliation if such examinations are not held before surgery."  (Greiper Aff. ¶ 5; Preservation Notice 1, annexed to Greiper Aff. as Ex. D, Docket Entry No. 15-5.)  Kang's counsel acknowledged receipt of the Preservation Notice by responding to defense counsel on that same day and stating, "Well received." (Greiper Aff. ¶ 5; Pl.'s Email Resp. to Preservation Notice ("Email dated Apr. 20, 2020"), annexed to Greiper Aff. as Ex. E, Docket Entry No. 15-6.)

On October 2, 2020, Kang's worker's compensation board approved Kang to undergo a cervical discectomy.  (Yook Aff. ¶ 17; Worker's Compensation Approval, annexed to Yook Aff. as Ex. O, Docket Entry No. 21-16.)  At his deposition on October 6, 2020, when asked if anyone had recommended neck surgery, Kang testified that his doctor suggested that he undergo a "[d]iscectomy."  (Tr. of Hoyeun Kang Dep. ("Dep. Tr.") 87:15–88:16, annexed to Yook Aff. as Ex. N., Docket Entry No. 22-3; Yook Aff. ¶ 16.)  He did not testify that he would be undergoing such surgery or when.

On October 31, 2020, Kang underwent a cervical spine discectomy, which procedure included (1) Discectomy C5-6, (2) Nucleus pulpous ablation, and (3) annuloplasty.  (Pl.'s Suppl. Bill of Particulars ¶ 11, annexed to Yook Aff. as Ex. P, Docket Entry No. 21-17.)  Kang did not notify Gillon before undergoing this procedure.  (Greiper Aff. ¶ 6.)  In a Supplemental Bill of

Particulars dated November 13, 2020, Kang informed Defendants of this surgery.  (Yook Aff. ¶ 18; Pl.'s Suppl. Bill of Particulars ¶ 11.)

### ii.    Defendant's motion for sanctions

On November 18, 2020, Gillon filed a motion for discovery, claiming that Kang "engaged in spoliation, by undergoing surgery without [first] allowing the [Independent Medical Examination] to take place." (Mot. for Discovery 1, Docket Entry No. 14.)  On December 1, 2020, Gillon served Kang with a notice to schedule an Independent Medical Examination ("IME") for January 19, 2021.  (Notice of Designation, annexed to Yook. Aff. as Ex. Q, Docket Entry No. 21-18.)  On December 7, 2020, the Court held a hearing and granted Gillon's request for leave to file a motion for sanctions.  (Min. Order dated Dec. 7, 2020.)

On December 21, 2020, Gillon filed his motion for sanctions, seeking dismissal of Kang's complaint, preclusion of Kang's cervical spine claim or of evidence of those injuries at trial, or an adverse inference charge based on Kang's destruction of evidence.  (Def.'s Mem. in Supp. of Def.'s Mot. 3, 15, Docket Entry No. 15-1.)  Judge Kuo held a motion hearing on February 5, 2021, at which Kang's counsel acknowledged that he received the Preservation Notice but provided no explanation for not notifying defense counsel before Kang underwent the cervical discectomy.  (Min. Entry dated Feb. 8, 2021.)  To assist the court in determining whether the surgery resulted in the loss of any evidence relevant to Gillon's defense, Judge Kuo granted Gillon leave to supplement his motion for sanctions by indicating what specific evidence, if any, was no longer available because of the cervical discectomy.  (*Id.*)  Judge Kuo also directed Kang to make himself available for a medical examination by a doctor selected by Gillon.  (*Id.*)

On April 12, 2021, Gillon's medical expert Dr. Yong H. Kim conducted an examination of Kang, and on April 26, 2021, Gillon filed his supplemental brief, attaching Dr. Kim's report (the "IME Report").  (Def.'s Suppl. Brief, Docket Entry No. 30; IME Report, annexed to Def.'s Suppl. Br. as Ex. A, at 7-12, Docket Entry No. 30.)  Dr. Kim reported that he was "unable to determine or evaluate [Kang]'s complaints of ongoing neck pain and right upper extremity symptoms that reportedly developed immediate[ly] following the …accident" because Kang underwent the surgery "with reported significant resolution of his symptoms."  (IME Report 10.)  Dr. Kim's examination of Kang's cervical spine showed "no objective or subjective issues in his cervical spine."  (*Id.*)  According to Dr. Kim, by having the cervical discectomy performed, "not only the content of the nucleus area of [Kang's spinal] disc at C5-6 was disrupted, but it also permanently disrupted and changed the overall structure of the annulus, the outer lining of the disc."  (*Id.* at 11.)  The cervical discectomy "produce[d] changes with respect to the overall characteristics of the disc and its ability to load and weight bear and produce range of motion compared to the preoperative state."  (*Id.*)  Kang filed a supplemental opposition brief on May 3, 2021.  (Pl.'s Suppl. Opp'n, Docket Entry No. 31.)

### b.   Report and recommendation

Judge Kuo recommended that that Court (1) consider the imposition of sanctions under the Court's inherent power, (2) find that there was spoliation of evidence, and (3) impose an adverse inference instruction as the appropriate remedy for spoliation.  (*See* R&R 5–15.)

First, Judge Kuo recommended that the Court consider imposing sanctions under its inherent authority although Gillon moved for sanctions pursuant to Rules 26(b), 37(b), and 37(c) of the Federal Rules of Civil Procedure.  (*Id.* at 5.)  Judge Kuo found that because Kang was "not directed to comply with a court order," the Court should evaluate "whether sanctions are

appropriate under the Court's inherent power."  (*Id.* (citing *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 108–09 (2d Cir. 2002)).)

Next, Judge Kuo found that Kang engaged in spoliation of evidence by undergoing cervical discectomy without first notifying Gillon because he (1) "had an obligation to preserve evidence of his medical condition" because he received "express notice that evidence of his medical condition was considered to be relevant when he was served with the Preservation Notice" and he "admits that he received the Preservation Notice and did not raise any objection to it," (*id.* at 6); (2) "acted at least negligently when he failed to preserve and maintain evidence of his medical condition and did not notify Defendants before taking action that could potentially destroy such evidence," (*id.* at 8); and (3) the evidence was "relevant to Defendant Gillon's defense on the issue of causation" because it would have enabled him "to determine whether Plaintiff Kang's alleged injuries in 2019 were non-existent, pre-existing, new, or exacerbated by the accident," (*id.* at 10).

Finally, Judge Kuo found that Kang's spoliation of evidence (1) does not warrant dismissal of the Complaint because he "did not engage in a pattern of violating court orders or repeatedly failing to appear at scheduled IMEs" and "the surgery affected only his cervical spine" and does not affect his "additional claims related to injuries to the lumbar spine and right shoulder," (*id.* at 12); (2) does not warrant preclusion of evidence of his cervical spine injuries because (a) he "provided no explanation for his failure to comply with the Preservation Notice," (b) "[e]vidence of [his] cervical spine injuries [is] crucial to his claim regarding those injuries" and thus precluding it "would amount to dismissal of his cervical spine claim," (c) "[t]he prejudice to Defendant Gillon caused by Plaintiff Kang's spoliation of his pre-surgery cervical spine condition is less significant" because the spoliation was only of evidence that Defendant

6

"could have obtained *before* the surgery, not of *all* evidence regarding [Plaintiff's] cervical spine injuries," and (d) "the imposition of an adverse inference instruction at trial . . . is sufficient to remedy the prejudice caused to Defendant Gillon," (*id.* at 13–14); and (3) does warrant an adverse inference instruction because "Kang's destruction of evidence . . . deprived Defendant Gillon of the ability to explore whether Plaintiff Kang had any cervical spine injuries after the 2019 accident, the extent of any such injuries[,] and whether such injuries were pre-existing or related to the earlier accident in 2014," (*id.* at 15).

  **c.   Kang's objections to the R&R**

  Kang does not object to the portions of the R&R determining that he had a duty to preserve the evidence of his medical condition, that Kang's alleged spoliation does not warrant dismissal, and that Kang's alleged spoliation doses not warrant preclusion. (*See* Pl.'s Obj. 1.) Kang argues, however, that the R&R wrongly concludes that: (1) he had a culpable state of mind by undergoing a cervical spine injury before appearing for an IME, (*see id.* at 2–4); (2) Gillon demonstrated that the condition of the cervical spine prior to surgery was relevant to his defense, (*see id.* at 4–6); and (3) an adverse inference is the appropriate remedy, (*see id.* at 6–7).

  With regard to culpable state of mind, Kang objects to the R&R's determination that "Plaintiff Kang acted at least negligently when he failed to preserve and maintain evidence of medical condition and did not notify Defendants before taking action that could potentially destroy such evidence." (*Id.* at 2 (quoting R&R 8).) Kang argues that his current medical records from the accident and prior medical records from before the accident, including independent test results, MRI reports, and doctor examinations, preserve the condition of the cervical spine before the surgery. (*Id.*) Kang also objects to the R&R determination that he "did not notify Defendants before taking action that could potentially destroy such evidence." (*Id.* at

3 (quoting R&R 8).)  Kang argues that he notified defense counsels of a cervical spine surgery

before he underwent the surgery when he indicated that "[he] might consider it because [he does

not] like injection in the first place."  (*Id.* (quoting Dep. of Hoyeun Kang ("Dep. Tr.") 84:24–

85:9, annexed to Pls.' Resp. as Ex. C, Docket Entry No. 22-3).)

As to relevance to Gillon's defense, Kang objects to the R&R's determination that Gillon

has demonstrated that the condition of the cervical spine prior to surgery was relevant to his

defense.  (*See id.* at 4.)  Kang argues that Dr. Kim's report is "arbitrary, inconsistent and

overbroad for imposition of sanctions."  (*Id.*)  In support, Kang contends that (1) Dr. Kim's

finding as to his inability to determine Kang's neck pain following the accident due to the

surgery is inconsistent and arbitrary, (*id.* at 4–5); (2) Dr. Kim's findings as to the causation of the

cervical spine injuries are contradictory to his MRI findings, (*id.* at 5–6); and (3) Dr. Kim's

finding that the surgery has undermined his ability to determine the causation of the cervical

spine injuries is overbroad, (*id.* at 6).

Finally, Kang argues that the imposition of an adverse inference is inappropriate because

he did not have a culpable state of mind and Gillon failed to establish through Dr. Kim's report

that the condition of the cervical spine before surgery is relevant to his defense.

Gillon did not respond to Kang's objections.

## II.  Discussion

### a.  Standards of review

#### i.  Report and recommendation

A district court reviewing a magistrate judge's recommended ruling "may accept, reject,

or modify, in whole or in part, the findings or recommendations made by the magistrate judge."

28 U.S.C. § 636(b)(1)(C).  When a party submits a timely objection to a report and

recommendation, the district court reviews *de novo* the parts of the report and recommendation to which the party objected. *Id.*; *see also United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015). The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the face of the record. *See John Hancock Life Ins. Co. v. Neuman*, No. 15-CV-1358, 2015 WL 7459920, at *1 (E.D.N.Y. Nov. 24, 2015) (applying the clear error standard when no objections to the magistrate judge's report and recommendation were filed). The clear error standard also applies when a party makes only conclusory or general objections. Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file specific written objections to the [magistrate judge's] proposed findings and recommendations."); *see also Colvin v. Berryhill*, 734 F. App'x 756, 758 (2d Cir. 2018) ("[M]erely referring the court to previously filed papers or arguments does not constitute an adequate objection under . . . Fed. R. Civ. P. 72(b)." (quoting *Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002))); *Benitez v. Parmer*, 654 F. App'x 502, 503–04 (2d Cir. 2016) (holding that "general objection[s] [are] insufficient to obtain *de novo* review by [a] district court").

Whether clear error review or *de novo* review applies when an objecting party reiterates the arguments made to the magistrate judge is unclear. While the Second Circuit has suggested that clear error review is appropriate if a party's objection to a magistrate judge's report and recommendation repeats arguments already presented to and considered by the magistrate judge, *see Mario*, 313 F.3d at 766 ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under either Fed. R. Civ. P. 72(b) . . . ."), the Second Circuit has more recently stated that it is "skeptical" that the clear error standard would be appropriate when the objection is based on a previously asserted argument, *see Moss v. Colvin*,

845 F.3d 516, 520 n.2 (2d Cir. 2017) ("[W]e are skeptical that clear error review would be appropriate in this instance, where arguably 'the only way for [the plaintiff] to raise . . . arguments [on that point] [was] to reiterate them.'" (third and fourth alterations in original) (first quoting *Watson v. Geithner*, No. 11-CV-9527, 2013 WL 5441748, at *2 (S.D.N.Y. Sept. 27, 2013); and then citing 28 U.S.C. § 636(b)(1))).  *See also Joseph v. Korn*, No. 19-CV-7147, 2021 WL 912163, at *1 (E.D.N.Y. Mar. 9, 2021) ("Although '[o]bjections that reiterate arguments considered and rejected by the magistrate are reviewed for clear error,' in an abundance of caution, this [c]ourt reviews [the] [p]laintiff's arguments *de novo*." (first quoting *Cruz v. Colvin*, No. 13-CV-1267, 2014 WL 5089580, at *1 (S.D.N.Y. Sept. 25, 2014); and then citing *Parker v. Comm'r of Soc. Sec'y Admin.*, No. 18-CV-3814, 2019 WL 4386050, at *6 (Sept. 13, 2019))); *Harewood v. New York City Dep't of Educ.*, No. 18-CV-5487, 2021 WL 673476, at *6 (S.D.N.Y. Feb. 22, 2021) ("[W]hen the objections simply reiterate previous arguments or make only conclusory statements, the court should review such portions of the report only for clear error." (first citing *Dickerson v. Conway*, No. 08-CV-8024, 2013 WL 3199094, at *1 (S.D.N.Y. June 25, 2013); and then citing *Kirk v. Burge*, 646 F. Supp. 2d 534, 538 (S.D.N.Y. 2009))); *Castorina v. Saul*, No. 19-CV-991, 2020 WL 6781078, at *1 (S.D.N.Y. Nov. 18, 2020) ("While courts in this [d]istrict sometimes state that objections that 'simply reiterate [the] original arguments' merit only clear error review, this rule lacks support in either 28 U.S.C. § 636(b)(1)(C) or Rule 72(b)(2) of the Federal Rules of Civil Procedure.  The Second Circuit has expressed similar skepticism." (alteration in original) (citations omitted)).

### ii.   Inherent power to sanction

A court has the inherent power to sanction a party "for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991); *Ceglia v. Zuckerberg*, 600 F.

App'x 34, 36 (2d Cir. 2015) ("A court has 'inherent power' to 'fashion an appropriate sanction

for conduct which abuses the judicial process.'" (quoting *Chambers*, 501 U.S. at 44–45)).

"Because of their very potency, inherent powers must be exercised with restraint and discretion."

*Chambers*, 501 U.S. at 44; *United States v. HSBC Bank USA, N.A.*, 863 F.3d 125, 136 (2d Cir.

2017) (quoting *Chambers*, 501 U.S. at 44).   "Sanctionable conduct must be proven by clear and

convincing evidence and the district court must make a specific finding of bad faith."

*Amerisource Corp. v. RX USA Int'l Inc.*, No. 02-CV-2514, 2010 WL 2730748, at *5 (E.D.N.Y.

July 6, 2010) (citing *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 136 (2d Cir.

1998)), *aff'd* 432 F. App'x 25 (2d Cir. 2011); *see also Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d

216, 235 (2d Cir. 2020) ("[C]lear and convincing evidence of bad faith is a prerequisite to an

award of sanctions under the court's inherent power.").   "Moreover inherent-power sanctions are

appropriate only if there is clear evidence that the conduct at issue is (1) entirely without color

and (2) motivated by improper purposes."  *Wolters Kluwer Fin. Servs. Inc. v. Scivantage*, 564

F.3d 110, 114 (2d Cir. 2009); *see also Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d 42, 56

(2d Cir. 2018) (quoting *Wolters Kluwer Fin. Servs. Inc.*, 564 F.3d at 114); *Brikman v. Hecht*, No.

19-CV-5143, 2021 WL 3741538, at *3 (E.D.N.Y. Aug. 24, 2021) (quoting *Wolters Kluwer Fin.

Servs. Inc.*, 564 F.3d at 114).   "Clear and convincing evidence is evidence that makes the fact to

be proved 'highly probable.'"  *RKI Constr., LLC v. WDF Inc.*, No. 14-CV-1803, 2020 WL

6545915, at *21 (E.D.N.Y. Nov. 6, 2020) (quoting *Abernathy-Thomas Eng'g Co. v. Pall Corp.*,

103 F. Supp. 2d 582, 595–96 (E.D.N.Y. 2000)).   "A finding of bad faith, and a finding that

conduct is without color or for an improper purpose, must be supported by a high degree of

specificity in the factual findings."  *Wolters Kluwer Fin. Servs. Inc.*, 564 F.3d at 114.

### b.  Unopposed portions of the R&R

No party has objected to the recommendations that the Court: (1) find that Kang had a duty to preserve the evidence of his medical condition, (2) that Kang's alleged spoliation does not warrant dismissal, and (3) that Kang's alleged spoliation doses not warrant preclusion.  The Court has reviewed the unopposed portions of the R&R and, finding no clear error, adopts the recommendations pursuant to 28 U.S.C. § 636(b)(1).

### c.  Spoliation of evidence

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."  *Twitty v. Salius*, 455 F. App'x 97, 99 (2d Cir. 2012) (quoting *West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776, 779 (2d Cir. 1999)).  "The spoliation of evidence germane 'to proof of an issue at trial can support an inference that the evidence would have been unfavorable to the party responsible for its destruction.'"  *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 107 (2d Cir. 2001) (quoting *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998)).  "In borderline cases, an inference of spoliation, in combination with 'some (not insubstantial) evidence' for the plaintiff's cause of action, can allow the plaintiff to survive summary judgment."  *Wood v. Pittsford Cent. Sch. Dist.*, No. 07-CV-0892, 2008 WL 5120494, at *2 (2d Cir. Dec. 8, 2008) (quoting *Byrnie*, 243 F.3d at 107); *see also Kronisch*, 150 F.3d at 128 ("We do not suggest that the destruction of evidence, standing alone, is enough to allow a party who has produced no evidence — or utterly inadequate evidence — in support of a given claim to survive summary judgment on that claim.  But at the margin, where the innocent party has produced some (not insubstantial) evidence in support of his claim, the intentional destruction of relevant

evidence by the opposing party may push a claim that might not otherwise survive summary judgment over the line.").

To succeed on a spoliation motion, the moving party must show:

> (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Klipsch Grp., Inc. v. ePRO E-Com. Ltd.*, 880 F.3d 620, 628 (2d Cir. 2018) (quoting *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 162 (2d Cir. 2012)).  "The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *In Re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 93, 148 (2d Cir. 2008) (quoting *Fujitsu Ltd. v. Fed. Exp. Corp.*, 247 F.3d 423, 436 (2d Cir. 2001)).  "Once a court has concluded that a party was under an obligation to preserve the evidence that it destroyed, it must then consider whether the evidence was intentionally destroyed, and the likely contents of that evidence." *Klipsch Grp., Inc.*, 880 F.3d at 630 (quoting *Fujitsu Ltd.*, 247 F.3d at 436); *see also United States v. Barnes*, 411 F. App'x 365, 368 (2d Cir. 2011) (same).  "The determination of an appropriate sanction for spoliation, if any, is confined to the sound discretion of the trial judge, and is assessed on a case-by-case basis." *Fujitsu Ltd.*, 247 F.3d at 436 (first citing *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999); and then citing *United States v. Grammatikos*, 633 F.2d 1013, 1019–20 (2d Cir. 1980)); *see also Mazzei v. Money Store*, 656 F. App'x 558, 559–60 (2d Cir. 2016) ("[A] district court may, at its discretion, grant an adverse inference jury instruction insofar as such a sanction would 'serve the threefold purpose of (1) deterring parties from destroying evidence[;] (2) placing the risk of an erroneous evaluation of the content of the

destroyed evidence on the party responsible for its destruction[;] and (3) restoring the party

harmed by the loss of evidence helpful to its case to where the party would have been in the

absence of spoliation.'" (quoting *Byrnie*, 243 F.3d at 107)).

The Court first addresses Kang's objection as to whether he had a culpable state of mind,

and next addresses whether the evidence in question is relevant to Gillon's defense.  The Court

does not address whether Kang had an obligation to preserve the evidence as Kang does not

object to Judge Kuo's recommendation that he did.

### 1.   Culpable state of mind

Kang opposes the R&R's finding that he acted with a culpable state of mind on the

grounds that, because his current medical records from the accident and prior medical records

from before the accident preserve the condition of the cervical spine before the surgery, the

evidence at issue is preserved.  (*See* Pl.'s Obj. 2.)  In addition, Kang objects to the R&R on the

grounds that he notified defense counsels of a cervical spine surgery before he underwent the

surgery.  (*Id.*)

"Once a court has concluded that a party was under an obligation to preserve the

evidence that it destroyed, it must then consider whether the evidence was intentionally

destroyed, and the likely contents of that evidence." *Klipsch Grp., Inc*, 880 F.3d at 630 (quoting

*Fujitsu Ltd*, 247 F.3d at 436); *see also Barnes*, 411 F. App'x at 368 (same); *Tomassini v. FCA

US LLC*, No. 14-CV-1226, 2020 WL 1938834, at *3 (N.D.N.Y. Apr. 22, 2020)).  "Even where

the preservation obligation has been breached, sanctions will only be warranted if the party

responsible for the loss had a sufficiently culpable state of mind." *Estate of Jackson v. County of

Suffolk*, No. 12-CV-1455, 2014 WL 1342957, at *11 (E.D.N.Y. Mar. 31, 2014) (quoting *In re

WRT Energy Sec. Litig.*, 246 F.R.D. 185, 195 (S.D.N.Y.2007)).  Failures to preserve evidence

occur "along a continuum of fault — ranging from innocence through the degrees of negligence

to intentionality." *Reilly v. Natwest Markets Grp. Inc.*, 181 F.3d 253, 267 (2d Cir.1999) (citation

and internal quotation marks omitted).  A culpable state of mind "must, at a minimum, constitute

simple negligence." *Dataflow, Inc. v. Peerless Ins. Co.*, No. 11-CV-1127, 2013 WL 6992130, at

*6 (N.D.N.Y. June 6, 2013) (quoting *Wade v. Tiffin Motorhomes, Inc.*, 686 F. Supp. 2d 174, 194-

95 (N.D.N.Y.2009)), *report and recommendation adopted in pertinent part*, No. 11-CV-1127,

2014 WL 148685 (N.D.N.Y. Jan. 13, 2014); *Liberman v. FedEx Ground Package Sys., Inc.*, No.

09-CV-2423, 2011 WL 145474, at *4 (E.D.N.Y. Jan. 18, 2011) ("A 'culpable state of mind' can

mean 'knowingly, even if without intent to breach a duty to preserve [the evidence], or

negligently.'" (alteration in original) (quoting *Residential Funding Corp.*, 306 F.3d at 108)).

Judge Kuo properly concludes that Kang acted with a culpable state of mind because his

failure to notify Gillon prior to surgery constitutes negligence.  It is undisputed that Kang was

aware of his duty to preserve the evidence of his medical condition.  He received a Preservation

Notice on April 20, 2020, from Gillon directing him to "appear for independent medical

examinations prior to undergoing surgery in this matter" or else "defendants will seek sanctions

for spoliation if such examinations are not held before surgery," (Greiper Aff. ¶ 5; Preservation

Notice 1), to which Kang's counsel acknowledged, "Well received" (Greiper Aff. ¶ 5; Email

dated Apr. 20, 2020).  At his deposition on October 6, 2020, Kang testified that "he might

consider [surgery]," but did not confirm that he would undergo surgery nor indicate when he

would do so.  (Dep. Tr. 87:15–88:16.)  Less than a month later, without notice to Gillon, Kang

underwent a cervical spine surgery that permanently disrupted his physiology.  (Pl.'s Suppl. Bill

of Particulars ¶ 11; Greiper Aff. ¶ 6; IME Report 10.)  There is nothing on the record to suggest

that Kang urgently required surgery due to a medical emergency.  Nor does Kang provide any

reason or circumstance that would have prevented notice to Defendants prior to surgery. Kang's submission of other medical records related to the accidents does not rectify the destruction of IME evidence because Gillon's reasonable effort to proffer objective evidence remains frustrated. Therefore, Kang's failure to preserve evidence by way of undergoing a permanently disruptive procedure — while on notice that such evidence was demanded for discovery — constitutes, at a minimum, simple negligence sufficient to show a culpable state of mind. *See Tomassini*, 2020 WL 1938834, at *3–4 (holding that plaintiff's removal of a failing car part constituted negligence consistent with a culpable state of mind because plaintiff "acted with the purpose of removing [the failing part] from the vehicle," knew that "they were the entire basis of [the] lawsuit," and "the evidence was, at a minimum, materially altered"); *Martinez v. Nelson*, 101 N.Y.S.3d 580, 584 (Sup. Ct. 2019) (holding that, in an action based on cervical spine injuries, plaintiff's election of non-emergency surgery without affording a defendant, who sent notice for a pre-surgery IME, an opportunity to have the IME performed before the surgery constitutes an act with a culpable state of mind).

### 2.   Relevance to Gillon's defense

Kang objects to Judge Kuo's finding that evidence of Kang's pre-operative cervical spine condition is relevant to Gillon's defense on the issue of causation. (Pl.'s Obj. 4–5.) Kang argues that the R&R did not consider that the IME Report is "arbitrary, inconsistent[,] and overbroad for imposition of sanctions." (*Id.* at 4.) In support, Kang contends that the R&R overlooked several flaws with Dr. Kim's findings: (1) his conclusion that he was unable to "determine Plaintiff['s] . . . complaints of ongoing neck pain immediately following the subject accident due to the cervical spine surgery" was arbitrary and inconsistent, (2) his finding as to "the causation of the cervical spine injuries" contradicted MRI findings, and (3) his conclusion "that cervical spine

surgery has undermined his ability to determine the causation of the cervical spine injuries is overbroad." (*Id.* at 4.)  First, Kang contends that Dr. Kim's findings are contradictory because on one hand, he states that "due to the cervical spine surgery[] he is unable to evaluate Plaintiff's ongoing neck pain," but on the other hand "he gives his evaluation regarding ongoing neck pain by opining that, upon his review of the MRI film of the cervical spine, Plaintiff Kang's cervical spine complaint is not correlated to his MRI findings." (*Id.* at 5.)  Next, Kang contends that Dr. Kim's conclusion that he is unable to reach a conclusion as to the causation of Kang's injury contradicts "his findings from his own review of the MRI film of the cervical spine" wherein he stated that any abnormalities "to the C5-6 level (where the cervical spine [surgery] was performed) are degenerative, rather than trauma related." (*Id.* at 5.)  Finally, Kang argues that Dr. Kim's finding that the "cervical spine surgery . . . undermined his ability to determine" the cause of Kang's cervical spine injuries is overbroad because Kang also sustained injuries to other levels of the cervical spine which were not affected by the surgery. (*Id.* at 6.)

A party moving for spoliation sanctions must show that the "destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support th[eir] claim or defense." *Klipsch Grp., Inc.*, 880 F.3d at 628 (quoting *Chin.*, 685 F.3d at 162); *see also ComLab, Corp. v. Tire*, 815 F. App'x 597, 600 (2d Cir. 2020) (quoting *Klipsch Grp., Inc.*, 880 F.3d at 628).  "'[R]elevant' in this context means something more than sufficiently probative to satisfy Rule 401 of the Federal Rules of Evidence."[2] *Residential Funding Corp.*, 306 F.3d at 108–09; *Warren v. City of N.Y. Dep't of Corr. Med. Staff*, No. 17-

---

[2]  Rule 401 of the Federal Rules of Evidence defines "relevant evidence" as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed. R. Evid. 401; *see also Omega SA v. 375 Canal, LLC*, 984 F.3d 244, 257 (2d Cir. 2021) (quoting Fed. R. Evid. 401(a)).

CV-1125, 2021 WL 1163105, at *15 (E.D.N.Y. Mar. 26, 2021) (quoting *Residential Funding Corp.*, 306 F.3d at 108–09). "Rather, the party seeking an adverse inference must adduce sufficient evidence from which a reasonable trier of fact could infer that 'the destroyed [or unavailable] evidence would have been of the nature alleged by the party affected by its destruction.'" *Residential Funding Corp.*, 306 F.3d at 109 (alteration in original) (quoting *Kronisch*, 150 F.3d at 127); *Lekomtsev v. City of New York*, No. 16-CV-4530, 2020 WL 5878258, at *4 (E.D.N.Y. Oct. 2, 2020) (quoting *Residential Funding Corp.*, 306 F.3d at 109). "Courts must take care not to 'hold[] the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed [or unavailable] evidence,' because doing so 'would subvert the . . . purposes of the adverse inference, and would allow parties who have . . . destroyed evidence to profit from that destruction.'" *Residential Funding Corp.*, 306 F.3d at 109 (quoting *Kronisch*, 150 F.3d at 128); *Herman v. City of New York*, 334 F.R.D. 377, 389 (E.D.N.Y. 2020) (same).

The Court finds that the evidence as to Kang's pre-operative cervical spine condition is relevant to Gillon's defense on the issue of causation. Kang brings a negligence claim against Gillon, (*see* Compl. ¶¶ 1–26), and "[u]nder New York law, . . . a plaintiff must establish three elements to prevail on a negligence claim: (1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof," *Comba v. United States*, No. --- F. Supp.3d ---, ---, 2021 WL 1601157, at *3 (E.D.N.Y. Apr. 23, 2021) (quoting *Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P.*, 737 F.3d 166, 177 (2d Cir. 2013)). Because Kang must prove causation of injury, evidence concerning Kang's condition prior to remedial surgery is relevant to Gillon's defense. *See id.* at *10 ("[C]ontemporaneous findings of

injury are highly relevant to causation." (quoting *Crawford-Reese v. Woodard*, 944 N.Y.S.2d 333, 336 (2012))).

Kang's argument that the IME Report was deficient because it was replete with inconsistencies or contradictions is unpersuasive.  The alleged inconsistencies in the IME Report are not true inconsistencies as to Dr. Kim's ability to examine Kang.  Dr. Kim states that he does not see trauma-related injuries on examination of Plaintiff on April 12, 2021, but does see degenerative disease-related injuries on MRI scans which were provided to him in medical records.  (*See* IME Report 8–10.)  Dr. Kim notes from his own examination of Kang consistently state that on the examination day, he was "unable to determine or evaluate the [Kang's] complaints of ongoing neck pain and right upper extremity symptoms that reportedly developed immediate[ly] following the subject motor vehicle accident . . . , as the claimant has undergone a percutaneous surgical procedure at the C5-6 level, with reported significant resolution of his symptoms."  (*Id.* at 10.)  Dr. Kim further stated that "the fact that [Kang] has undergone a percutaneous surgical procedure to the C5-6 level prior to . . . examination, . . . undermines my ability to accurately determine any causally-related issues with respect to the claimant's cervical spine."  (*Id.*)

Moreover, any inconsistencies in the IME Report do not negate Dr. Kim's finding that an examination of Kang's condition pre-surgery was relevant to establish causation of his injury.  To the contrary, courts that have considered the issue have found that a plaintiff undergoing surgery and depriving the defendants' IME of the opportunity to examine them prior to surgery, when the plaintiff was on notice of defendants' desire to conduct an IME, constitutes spoliation of relevant evidence.  *See Mangione v. Jacobs*, 950 N.Y.S.2d 457, 467 (Sup. Ct. 2012) ("The undersigned . . . thus holds that a plaintiff undergoing non-emergency and non-life-threatening

surgery, thereby depriving the defendants of a court-ordered IME, can and does constitute the spoliation of evidence."), *aff'd*, 995 N.Y.S.2d 137 (2014); *see also Rogers v. Averitt Express, Inc.*, 215 F. Supp. 3d 510, 519 (M.D. La. 2017) (stating on motion for sanctions in personal injury suit based on spoliation of evidence that "there is no doubt that . . . the evidence was clearly relevant" when the plaintiff did not allow the defendant's IME to examine him prior to spine surgery); *Baskerville v. Albertson's, LLC*, No. 15-CV-902, 2016 WL 7030446, at *2 (D. Nev. Jan. 7, 2016) ("The court finds that [the plaintiff's] pre-surgery spinal condition is relevant to [the defendant's] defense that the surgery was not the result of the incident that gave rise to the instant action.").

Accordingly, the Court finds that Judge Kuo correctly concluded that the now unavailable evidence was relevant to Gillon's defense.[3]

---

[3] Kang states that he objects to Judge Kuo's recommendation that an adverse inference sanction should be imposed.  (Pl.'s Obj. 6–7.)  Kang argues that an "adverse inference instruction is inappropriate" because he did not "have a culpable state of mind" and that Gillon, "through submission of Dr. Kim's [IME] Report, failed to establish that the condition of the cervical spine before the cervical spine surgery is relevant to [his] defense."  (*Id.* at 7.)  Because Kang's arguments as to why an adverse inference instruction sanction should not be imposed reiterate the arguments already addressed in this Memorandum and Order, the Court does not separately address these arguments.  In addition, the Court finds that the imposition of an adverse inference instruction is appropriate here to remedy the evidentiary imbalance created by Defendant.  *See Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 108 (2d Cir. 2002) ("It makes little difference to the party victimized by the destruction of evidence whether that act was done willfully or negligently. The adverse inference provides the necessary mechanism for restoring the evidentiary balance.").

**III.   Conclusion**

For the foregoing reasons, the Court adopts the R&R in its entirety and grants

Defendants' motion to for sanctions.

Dated:  September 30, 2021
        Brooklyn, New York

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge